**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gregory Sawnick, | No. CV-22-01701-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff challenges the denial of his application for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 11), the Commissioner's answering brief (Doc. 15), and Plaintiff's reply brief (Doc. 16), as well as the Administrative Record (Doc. 10, "AR"), and now affirms the Administrative Law Judge's ("ALJ") decision.

I.   Procedural History

On April 13, 2018, Plaintiff filed a protective application for supplemental security income, alleging disability beginning on December 28, 2012. (AR at 140.) The Social Security Administration ("SSA") denied Plaintiff's application at the initial and reconsideration levels of administrative review and Plaintiff requested a hearing before an ALJ. (*Id*.) On September 29, 2020, following a telephonic hearing, the ALJ issued an unfavorable decision. (*Id.* at 140-48.) However, the Appeals Council later granted Plaintiff's request for review and remanded the case to the ALJ for further proceedings.

(*Id.* at 154-57.)

On November 3, 2021, following the remand, the ALJ held a video hearing. (*Id.* at 15.) Afterward, on December 6, 2021, the ALJ issued another unfavorable decision. (*Id.* at 15-27.) The Appeals Council later denied review. (*Id.* at 1-3.)

II.     The Sequential Evaluation Process And Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the

ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III. The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial, gainful work activity since the alleged onset date and had the following severe impairments: "multilevel degenerative disc disease, opioid use disorder in remission, anxiety, alcohol dependence in remission, borderline personality disorder, and carpal tunnel syndrome." (AR at 18.)[1] Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing. (*Id.* at 19-20.) Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can engage in frequent pushing and/or pulling with the right upper extremity; cannot climb ladders, ropes, or scaffolds; cannot crawl; and can only occasionally climb ramps or stairs, stoop, crouch, kneel and balance as defined in the DOT. He can engage in occasional overhead reaching with the bilateral upper extremities, and frequent handling, fingering, and feeling with the right upper extremity. He can work with occasional exposure to excessive vibration, but should have no exposure to dangerous moving machinery and unprotected heights. The claimant can perform work involving understanding, remembering, and carrying out simple instructions consistent with an SVP of 2 or below. The claimant can perform work with occasional routine changes in the work setting. The claimant can occasionally interact with the public and coworkers, but is unable to work in tandem.

(*Id.* at 20-21.)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding that although Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

---

[1] The ALJ also noted that that Plaintiff had the non-severe impairments of gastroesophageal reflux disease ("GERD") and dental infection and claimed the non-medically determinable impairment of seizures. (AR at 18.)

consistent with the medical evidence and other evidence in the record during the relevant time period for the reasons explained in this decision." (*Id.* at 21-22. *See also id.* at 24 ["[T]he claimant's hearing testimony received careful consideration but was ultimately not persuasive."].) The ALJ also evaluated opinion evidence from various medical sources as follows: (1) Dr. Gary Coleman, state agency medical consultant ("partially persuasive"); (2) Dr. K. Mauro, state agency medical consultant ("partially persuasive"); (3) Dr. Stephen Fair, state agency psychological consultant ("persuasive"); (4) Dr. Robert Liss, state agency psychological consultant ("persuasive"); and (5) Dr. David Franey ("not . . . fully persuasive"). (*Id.* at 25.) Additionally, the ALJ considered "the statement on file from the U.S. Department of Education noting the claimant's student loans were discharged due to total and permanent disability" but concluded that this statement was "inherently neither valuable nor persuasive" because it was "from a separate agency and did not include any analysis of the claimant's 'total and permanent' condition." (*Id.* at 25-26.)

Based on the testimony of a vocational expert, the ALJ concluded that although Plaintiff had no past relevant work, he was capable of performing jobs that exist in significant numbers in the national economy, including office helper, cashier II, and usher. (*Id.* at 26-27.) Thus, the ALJ concluded that Plaintiff is not disabled. (*Id.* at 27.)

IV.   Discussion

Plaintiff presents two issues on appeal: (1) whether the ALJ improperly discredited his symptom testimony; and (2) whether the ALJ erred by "acknowledging that [his] multilevel degenerative disc disease was a severe impairment, but failing to include the need for an assistive device to help with walking in the [RFC] determination." (Doc. 11 at 1.)[2] As a remedy, Plaintiff argues that "[t]his Court should remand this case with direction for calculation of benefits. Only in the alternative should this Court remand for further administrative proceedings." (*Id.* at 19.)

---

[2] Plaintiff presents these issues in reverse order in his opening brief, but as the Commissioner correctly notes in the answering brief, "the ALJ's analysis of Plaintiff's subjective symptoms forms a significant part of the basis for the assessed RFC." (Doc. 15 at 5.) Therefore, the Court will begin by addressing Plaintiff's challenge to the ALJ's evaluation of his symptom testimony.

A. **Plaintiff's Symptom Testimony**

1. Standard Of Review

An ALJ must perform a two-step analysis to determine the credibility of a claimant's pain and symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. If so, and if there is no evidence of malingering, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" only by "providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015).

2. Plaintiff's Symptom Testimony

The ALJ provided the following summary of Plaintiff's symptom testimony:

> The claimant alleges disability mainly due to back issues, carpal tunnel syndrome, and mental health impairments. He testified that he has not tried to work because of the pain from his injuries. He stated that at times he walks as much as he can, lie down periodically, and use pain medication, but the pain is always there. The claimant reported that he has pain mainly in his neck going down his right arm and his lower back and left leg. He said that with his mental health impairments, there were times where he felt really low and depressed from not being able to function and do things that he could before. He contended that it causes him anxiety worrying about not being able to take care of himself. The claimant stated that he can sit for about 10 minutes at a time before stretching out because of pain radiating in his lower back, and he lies down 4 to 5 times a day for 20 minutes to a half hour at a time. He reported that he uses a cane when he walks for support and help balancing, but not always while in the house. He said that if he stands too long, he will lose his balance and could fall from the nerve pain, and he has shooting pain in his neck and arms if he tries to lift something too heavy like a gallon of milk. The claimant alleged that he can be on his feet 5 minutes at a time before needing to take a break. He stated that he has had over 20 injections in his neck, and the last one in 2017 caused a lot of pain; and his doctor told him that with neck surgery, there would be a less than 20 percent chance of improvement.

(AR at 21.)

1             3.      The ALJ's Evaluation Of Plaintiff's Symptom Testimony

The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent for the reasons explained in this decision." (*Id.* at 21-22.) The ALJ also provided what the Court perceives to be five reasons for this adverse credibility finding. (*Id.* at 22-25.)

The first reason was inconsistency with the objective medical evidence. As for Plaintiff's alleged physical symptoms, the ALJ found as follows: "Despite findings of degenerative disc disease, as evidenced by MRI and examination, there is no objective evidence of nerve root impingement. Further, the clinical findings do not support greater limitations than shown in the residual functional capacity. While there are findings of tenderness to palpation, and decreased range of motion the objective physical examinations generally support normal strength in all extremities, a normal gait and no apparent distress. This is inconsistent with his allegations that he can only sit for ten minutes, and then must recline four to five times a day for up to half an hour. It is noted that there was one finding of decreased bilateral lower extremities strength, but this was limited by pain and is not persuasive of additional limitations. Objective evidence fails to support his allegations of balance issues and foot issues." (*Id.* at 23-24.) Meanwhile, as for Plaintiff's alleged mental symptoms, the ALJ noted that Plaintiff's "examinations have generally been within normal limits, with good memory, insight, judgment, concentration and mood. The evidence shows he received treatment mainly for his opiate addiction." (*Id*. at 24.) Elsewhere in the decision, the ALJ elaborated that although Plaintiff was once admitted to the hospital for a suicide attempt, he reported during the hospital stay that he had ingested the poison (Lysol cleaner) as a joke and denied being depressed; that one of Plaintiff's mental status examinations showed fair cognition and memory, concrete thought processes, an appropriate affect, and no delusions or hallucinations; that another exam showed that Plaintiff was oriented and alert, had normal speech, was calm, had logical thought processes and associations, and had unremarkable stream of thought with no reports of delusions or hallucination; and that Plaintiff reported during a June 2018 medical visit that

he did not have any mental health concerns. (*Id.* at 22-23.)

The second reason was failure to follow treatment recommendations. More specifically, the ALJ noted that Plaintiff "has had pain management as well as physical therapy" but "he violated an opiate agreement in March of 2018 and self discharged when a provider declined opiates." (*Id.* at 24.) Elsewhere in the discussion of Plaintiff's symptom testimony, the ALJ noted that "Plaintiff discharged himself from pain management in March 2018"; that Plaintiff "declined a referral to a hand specialist"; that "November 2020 mental health records show [Plaintiff's] treatment was voluntarily terminated early due to lack of contact"; that Plaintiff "terminated his mental health treatment in January 2021 with no apparent concerns"; and that Plaintiff "declined a current electromyogram/nerve conduction study." (*Id.* at 22-24.)

The third reason was that, when Plaintiff did pursue treatment, his symptoms improved and were controlled: "Overall, the medical evidence of record shows that with medical treatment the claimant's mental health and substance abuse issues were controlled and stable." (*Id.* at 24.) On this point, the ALJ noted that "[d]espite occasional claims of doing poorly, other records indicate that [Plaintiff] was able to manage his anxiety with lorazepam. For his opiate addiction, the claimant has doing well on methadone maintenance." (*Id.*) Elsewhere in the discussion of Plaintiff's symptom testimony, the ALJ noted that an August 2018 treatment note showed that Plaintiff experienced improvement of his initial anxiety symptoms with his symptoms being controlled; that although Plaintiff reported in March 2019 that his symptoms were poorly controlled, by August 2019 they were fairly controlled; that November 2019 case notes showed Plaintiff was doing well; that Plaintiff stated in February 2020 that he felt stable on his current dose and was doing well; and that in January 2021 Plaintiff stated that he was doing well with no concerns at that time. (*Id.* at 23.)

The fourth reason was that Plaintiff made exaggerated claims regarding the need for an assistive device. (*Id.* at 24.) The ALJ elaborated: "[Plaintiff] alleged the need for an assistive device . . . [but] there is no evidence on file that any of his treating physicians

prescribed this during the period at issue. He was seen ambulating with a cane occasionally, but more frequently did not use a cane at all. Thus, there is no evidence that the claimant is dependent on an assistive device, as our 1.00 listings requires." (*Id.*) The ALJ also noted that the record from a medical appointment in October 2018 showed that Plaintiff was "able to ambulate without an assistive device." (*Id.* at 22.)

The fifth reason was inconsistency with Plaintiff's activities of daily living ("ADLs"). On this point, the ALJ elaborated: "[Plaintiff's] daily activities are inconsistent with a claim for disability. Despite claims of debilitating pain, the claimant was able to plan trips to Michigan, as well as eight and nine-day church retreats. He testified that the retreats take place in hotels and he is allowed to sit/stand as needed. He lives with his 95-year-old father, and was able to provide emotional support and drive him to the supermarket. . . . He enjoyed playing guitar and traveling." (*Id.* at 24.)

### 4. The Parties' Arguments

Plaintiff challenges the sufficiency of the ALJ's reasons for discrediting his symptom testimony. (Doc. 11 at 13-19.) First, Plaintiff argues that the ALJ committed legal error by concluding that inconsistency with the medical evidence was a permissible basis for discrediting his testimony. (*Id.* at 14.) Second, Plaintiff argues that the ALJ simply provided a summary of the medical evidence without identifying "any specific inconsistency." (*Id.* at 15.) For example, Plaintiff argues that the ALJ failed to explain why the absence of nerve root impingement or the findings of tenderness and decreased range of motion was inconsistent with his testimony. (*Id.* at 15-16.) Third, Plaintiff argues that his violation of the opioid agreement and self-discharge from the pain management clinic do "not show an inconsistency with" his testimony regarding chronic pain. (*Id.* at 16.) Fourth, Plaintiff argues that the ALJ's cane-related analysis was flawed because "a cane does not require a prescription." (*Id.*) Fifth, Plaintiff argues that the ALJ erred by making a finding of ADL-related inconsistency because there is no evidence that he actually traveled to Michigan and the church retreats were "isolated functions . . . [that] do not show [he] was able to function over the course of an eight-hour day, five days per

week." (*Id.* at 16-18.) As for his comments regarding guitar playing, Plaintiff notes they were made before the alleged onset date. (*Id.* at 18.)

The Commissioner defends the sufficiency of the ALJ's rationale for discrediting Plaintiff's symptom testimony. (Doc. 15 at 4-19.) As an initial matter, the Commissioner argues that the ALJ made sufficiently specific findings and applied the correct legal standards. (*Id.* at 4-6.) As for the ALJ's finding of inconsistency with the objective medical evidence, the Commissioner argues that this was a permissible basis for making an adverse credibility determination and that the finding was supported by substantial evidence because the generally benign findings during physical exams and longitudinal record were inconsistent with Plaintiff's extreme testimony. (*Id.* at 6-7, 9-10.) The Commissioner also argues that the ALJ permissibly made a finding of inconsistency based on the lack of nerve root impingement in the imaging studies, as "given Plaintiff's complaints of radiating pain, one would expert evidence like nerve root impingement that would explain the pain." (*Id.* at 9.) As for the ALJ's discussion of cane usage, the Commissioner argues that "substantial evidence supports the ALJ's finding that Plaintiff did not need a cane for ambulation" in light of the generally benign medical records, Plaintiff's failure to use a cane during some medical appointments, and Plaintiff's ADLs. (*Id.* at 7-9.) Elsewhere, the Commissioner elaborates: "The Commissioner does not contend that a prescription is required for the use of a cane. Instead, the lack of a prescription supports the ALJ's conclusion that Plaintiff did not medically need a cane where, as here, the record shows that Plaintiff frequently did not use a cane and generally had normal physical examination findings, such as normal gait and strength." (*Id.* at 11-12.) Next, the Commissioner argues that the ALJ permissibly discredited Plaintiff's testimony on the ground that his symptoms improvement with treatment and notes that Plaintiff does "not adequately explain his failure to follow his prescribed course of [pain management] treatment." (*Id.* at 10-12.) Next, the Commissioner argues that the ALJ permissibly discredited Plaintiff's testimony on the basis of inconsistency with ADLs, arguing that "the issue here is not whether Plaintiff's activities evinced actual vocational

ability, but rather whether they suggest greater functional ability than he has alleged" and that the cited ADLs demonstrate such inconsistency because, *inter alia*, "Plaintiff's report that he might take an out-of-state trip is inconsistent with his testimony as it presumes that he would not need to change positions to the extent he alleged" and "Plaintiff admitted to travelling out-of-state to Indian Wells, CA and does not explain how he could do this given his alleged need to constantly change positions." (*Id.* at 13-15.) Finally, the Commissioner argues that the ALJ permissibly discredited Plaintiff's testimony on the ground that it was inconsistent with the opinions of the state agency consultants. (*Id.* at 15-18.) The Commissioner further argues that because Plaintiff has failed to challenge the ALJ's evaluation of those opinions, he has forfeited any claim of error. (*Id.*)

In reply, Plaintiff accuses the Commissioner of displaying "confusion" as to the applicable legal test and of simply repeating the ALJ's logic without properly defending it; argues that the Commissioner is not qualified to opine on whether nerve root impingement would be expected in a claimant who has radiating pain; argues that the ALJ did not identify his self-discharge from the pain management clinic as evidence of a failure to follow treatment (and, in fact, "did not provide reasoning at all" in relation to that issue); and largely repeats his earlier arguments regarding ADLs. (Doc. 16 at 7-11.)

### 5. Analysis

The Court finds no harmful error in the ALJ's evaluation of Plaintiff's symptom testimony.

One of the ALJ's reasons for discrediting Plaintiff's testimony was that Plaintiff failed, without adequate explanation, to pursue recommended courses of treatment. This is a valid reason under Ninth Circuit law for making an adverse credibility finding. *Larsen v. Kijakazi*, 2022 WL 1537365, *1 (9th Cir. 2022) ("The ALJ provided specific, clear, and convincing reasons to discount Larsen's testimony because . . . his symptoms improved with treatment [and] there was an unexplained absence of treatment for a portion of the closed period . . . ."); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) ("[T]he ALJ may consider . . . [an] unexplained or inadequately explained failure to seek treatment or

to follow a prescribed course of treatment . . . .") (citations omitted); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[A]n unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment . . . can cast doubt on the sincerity of the claimant's pain testimony.").

The ALJ's finding on this point is supported by substantial evidence. Plaintiff testified that the pain prevented him from even looking for work. (AR at 47 [Q: "[W]hy have you not tried to work or look for work at all?" A: "Because of . . . the pain that I have suffered from my injuries I hvave not been able to perform any."].) However, as the ALJ correctly noted, the evidence in the record shows that Plaintiff "discharged himself from pain management on 3/15/2018." (AR at 840.) It was rational for the ALJ to make a finding of inconsistency under these circumstances. Tellingly, Plaintiff does not attempt to offer a valid explanation for his unilateral decision to stop seeking pain-management treatment. His only argument on this issue is that the ALJ was not actually making a failure-to-follow-treatment finding (Doc. 16 at 9) but this argument is belied by the record—although the ALJ did not use the exact words "failure to follow prescribed course of treatment," it is evident in context that this was the ALJ's point. (AR at 24 ["Regarding his treatment, he has had pain management as well as physical therapy. Notably, he violated an opiate agreement in March of 2018 and self discharged when a provider declined opiates."].) The Court further notes that the ALJ's opinion contains several additional references to Plaintiff's failure to follow other treatment recommendations. (*Id.* at 22 ["The claimant declined a referral to a hand specialist."]; *id.* at 23 ["November 2020 mental health records show [Plaintiff's] treatment was voluntarily terminated early due to lack of contact."]; *id.* at 24 ["[Plaintiff] terminated his mental health treatment in January 2021 with no apparent concerns."]; *id.* ["[Plaintiff] declined a current electromyogram/nerve conduction study."].) Plaintiff does not acknowledge these references in his briefing.

Another of the ALJ's reasons for discrediting Plaintiff's symptom testimony was that Plaintiff had made exaggerated claims about the need for a cane. (*Id.* at 24 ["[Plaintiff]

alleged the need for an assistive device . . . [but] there is no evidence on file that any of his treating physicians prescribed this during the period at issue. He was seen ambulating with a cane occasionally, but more frequently did not use a cane at all." (*Id.*) This, too, qualifies as a valid reason under Ninth Circuit law for discrediting a claimant's symptom testimony. *See, e.g., Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (concluding that "the ALJ did offer clear and convincing reasons for rejecting Verduzco's testimony" where "the ALJ noted that the appellant had walked slowly and used a cane at the hearing, although none of his doctors had ever indicated that he used or needed to use an assistive device in order to walk" and "two doctors had specifically noted that the appellant did not need such a device"); *Donathan v. Astrue*, 264 F. App'x 556, 558 (9th Cir. 2008) (concluding that "the ALJ provided clear and convincing reasons for rejecting Donathan's subjective allegations" where the ALJ "offered several reasons supporting the adverse credibility determination, including . . . inconsistencies regarding Donathan's need for use of a cane or scooter"); *Doyle v. Comm'r of Soc. Sec. Admin.*, 2022 WL 4354608, *6 (D. Ariz. 2022).

The ALJ's conclusion on this point is supported by substantial evidence. During the hearing, Plaintiff testified that he "need[s] to use a cane" because he's "not able to stay balanced" and that he "use[s] a cane when [he] walk[s]." (AR at 54.) However, the ALJ correctly noted that Plaintiff was often observed *not* using a cane during post-onset medical appointments: "[M]ore frequently [he] did not use a cane at all." (*Id.* at 24, citing Exhibits 22F, 25F-31F.) It was thus rational for the ALJ to conclude that Plaintiff had made inaccurate or exaggerated statements regarding his need for a cane (and to discount Plaintiff's credibility on that basis). *See also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider . . . ordinary techniques of credibility evaluation, such as . . . other testimony by the claimant that appears less than candid . . . .") (citation omitted); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (identifying a "tendency to exaggerate" as a "specific and convincing reason[] . . . for discrediting [a claimant's] testimony").

Plaintiff's arguments to the contrary are unavailing. Plaintiff emphasizes that a

doctor's prescription is not needed for a cane and that some of the ALJ's cane-related analysis addressed whether (for step-three purposes) certain listings were satisfied. But these observations, even if true, do not undermine the ALJ's separate finding—which, as noted, is supported by substantial evidence—that Plaintiff's testimony regarding his need for a cane was exaggerated and inconsistent with the records demonstrating that he could and did ambulate without a cane.

Finally, yet another of the ALJ's reasons for discrediting Plaintiff's symptom testimony was that the testimony was inconsistent with Plaintiff's ADLs. This is also a permissible basis for an adverse credibility finding under Ninth Circuit law. *Molina*, 674 F.3d at 1112-13 ("[T]he ALJ may consider inconsistencies . . . between the testimony and the claimant's conduct . . . and whether the claimant engages in daily activities inconsistent with the alleged symptoms. While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (cleaned up); *Fry v. Berryhill*, 749 F. App'x 659, 660 (9th Cir. 2019) ("The ALJ proffered specific, clear, and convincing reasons for discounting Fry's testimony concerning the severity of her symptoms, including inconsistencies between her daily activities and alleged limitations . . . .").

The ALJ's finding of inconsistency is supported by substantial evidence. During the hearing, Plaintiff testified that he can only sit for 10 minutes at a time, after which he needs to lay down for 20 minutes. (AR at 50.) However, Plaintiff acknowledged that he traveled to California in 2019 for a church retreat. (*Id.* at 55.) Plaintiff stated that such retreats ordinarily involve daily services, group lunches, and various group activities. (*Id.* at 52.) Additionally, the ALJ cited records in which Plaintiff discussed plans to participate in other forms of travel. (*Id.* at 1225 ["Client stated that he may be taking a trip to Michigan in the spring . . . ."]; *id.* at 1223 ["[Client] will be going out of town. Client stated that he

has a lot to do before leaving for his trip, but that he is excited to go."].) It was rational for the ALJ to make a finding of inconsistency under these circumstances—indeed, Plaintiff does not explain how he could engage in out-of-state travel despite being able to sit for only 10 minutes at a time. At any rate, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954.

The Court also disagrees with Plaintiff's contention that the cited ADLs are irrelevant for credibility-assessment purposes because "they do not show [he] was able to function over the course of an eight-hour day, five days per week." (Doc. 11 at 17.) The Ninth Circuit has recognized that "[i]nconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination." *Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014). This makes sense—a factfinder is entitled to discount the credibility of a witness who has been shown to have testified in a false or exaggerated manner even if the impeaching daily activities would not, alone, compel a finding of non-disability. *See also Tonapetyan*, 242 F.3d at 1148 (recognizing that a "tendency to exaggerate" is a "specific and convincing reason[]" for discrediting a claimant's testimony); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider . . . ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid . . . ."). *See generally* 9th Cir. Model Jury Ins. 1.14 ("[I]f you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.").

Because the ALJ identified multiple clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's symptom testimony, it is unnecessary to resolve Plaintiff's objections to the additional rationales the ALJ offered for discrediting his testimony. Any error as to those additional rationales was harmless. *See, e.g., Molina*, 674 F.3d at 1112-13 ("[S]everal of our cases have held that an ALJ's error was harmless

where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) ("Because we conclude that two of the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error. . . . [T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error, it is whether the ALJ's decision remains legally valid, despite such error. . . . Here, the ALJ's decision finding Carmickle less than fully credible is valid, despite the errors identified above.").

B. **No Cane-Related Restriction In The RFC**

Plaintiff's other contention on appeal is that "[t]he ALJ's failure to include the requirement for an assistive device in the [RFC] determination was error. The ALJ's omission of an assistive device is clearly incongruent with the medical evidence and with [Plaintiff's] capacities in light of his severe cervical and lumbar spine pain." (Doc. 11 at 9-10.) Plaintiff argues that the "absence of a formal prescription for a cane in this record is not a valid reason to reject [Plaintiff's] need for cane" because (1) Plaintiff's chronic pain predates the application date and (2) "a prescription is not required for the use of a cane." (*Id.* at 10-11.) Plaintiff further argues that the "lack of notation of cane use in every physician's treating record" was an impermissible basis for omitting a cane requirement because the primary purpose of medical records is not to provide documentation for disability claims. (*Id.* at 11.) As for the ALJ's determination that Plaintiff was not dependent on a cane in a manner that would trigger listing 1.00, Plaintiff argues that "consideration of whether [Plaintiff's] spinal impairments met a Social Security listing was not the ALJ's only task. . . . [Plaintiff's] medical records show he was using a cane in February 2019 at a mental health care visit, in July and October 2021 at pain visits, and testified that he used cane when he left the house because if he was on his feet for too long, he felt he became unbalanced." (*Id.*) Plaintiff contends the error was not harmless "because the requirement of a cane would have eliminated the availability of all light-level

jobs." (*Id.* at 12-13.)

This issue requires little additional discussion in light of the conclusions reached in Part A above. Plaintiff does not contend that any medical source opined as to the necessity of a cane. And although Plaintiff himself made a claim to that effect, the ALJ permissibly discounted Plaintiff's testimony on that topic for the reasons discussed in Part A. It follows that the ALJ was not required to include, in the RFC, any cane-related limitations.

Finally, to the extent Plaintiff's argument is that a cane-related limitation was required in light of the ALJ's step-two finding that Plaintiff's degenerative disc disease qualified as a "severe" impairment, this argument is unavailing for the reasons stated by the Commissioner: "That a claimant has a 'severe' medically determinable impairment does not correlate with specific functional limitations, as Plaintiff suggests. 'Severe' is a term of art used at the second step of the sequential evaluation process. . . . The ALJ does not determine a claimant's RFC until after step three of the evaluation process. And the ALJ assesses the RFC based on all the relevant evidence in the case record, after considering each of the claimant's medically determinable impairments, whether they are severe or not. Accordingly, the mere fact of a 'severe' medically determinable impairment of degenerative disc disease does not demand that an ALJ find a particular functional limitation or, more specifically, the need for an assistive device, as Plaintiff appears to contend." (Doc. 15 at 7.)

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 14th day of November, 2023.

Dominic W. Lanza
United States District Judge